IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT CINCINNATI)

| | |
|---|---|
| Jeffrey V. Mattox<br>6104 Woodmont Ave.<br>Cincinnati, OH 45213<br><br>        Plaintiff,<br><br>v.<br><br>Neyra Motor Cars, LLC<br>9115 Blue Ash Rd.<br>Cincinnati, OH 45242<br><br>    Please serve:<br>    KMK Service Corp.<br>    One E. Fourth St., Suite 1400<br>    Cincinnati, OH 45202<br><br>        Defendant. | Case No. 1:20-cv-753<br><br>Judge _____ |

**COMPLAINT AND JURY DEMAND**

Now comes Plaintiff, Jeffrey Mattox, by and through counsel, and for his Complaint against Defendant Neyra Motor Cars, LLC, states, alleges, and avers as follows:

1.      Plaintiff Jeffrey Mattox ("Plaintiff" or "Mattox") is an individual who resides in Hamilton County, Ohio.

2.      Defendant Neyra Motor Cars, LLC, doing business as Jaguar Land Rover of Cincinnati ("Defendant" or "Cincy JLR"), is an Ohio limited liability company with its principal place of business in the City of Blue Ash, Hamilton County, Ohio.

1

3. This Court has jurisdiction over Plaintiff's False Claims Act claim pursuant to 31 U.S.C. 3729 et seq. and 28 U.S.C. 1331.

4. The Court's jurisdiction over Plaintiff's Ohio claims is proper pursuant to 28 U.S.C. 1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

5. Venue in this Court is proper pursuant to 28 U.S.C. 1391, because (a) a substantial part of the acts and omissions giving rise to this Complaint occurred in the Southern District of Ohio; (b) Cincy JLR does substantial business in the Southern District of Ohio; and (c) Cincy JLR's principal place of business is located in the Southern District of Ohio.

**FACTS**

6. Cincy JLR is in the business of selling Jaguar and Land Rover vehicles in the greater Cincinnati area.

7. Mattox has been employed at Cincy JLR as a sales guide since April 15, 2015.

8. Until his termination, Mattox was a loyal and dedicated employee. He is a certified master for Jaguar and Land Rover vehicles. As of August 2020, he was ranked 31st in the country for Jaguar sales customer satisfaction, out of approximately 1600 sales associates across the country.

9. Mattox routinely worked over forty hours per week.

10. Mattox's compensation consisted of a stipend of $1,000 per month, plus earned commissions.

11. In April 2020, Cincy JLR applied for a loan from the Paycheck Protection Program business loan program established by the U.S. government and administered by the Small Business Administration through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. According to SBA public records, on April 10, 2020, Cincy JLR was approved for a loan between $350,000 and $1,000,000 in order to retain 54 jobs ("the PPP loan"). In addition to employing sales representatives like Mattox, Cincy JLR also employs mechanics and other personnel.

12. The General Manager for Cincy JLR, Andy Wise, emailed the sales associates on April 22, 2020 to advise that Cincy JLR had in fact secured funds under the Paycheck Protection Program.

13. Shortly at or near the time Cincy JLR was approved for the PPP loan, it also unilaterally changed the amount and method by which it compensated its sales representatives as well as the way it documented their compensation. In addition to receiving typical pay stubs, Mattox (and others) began receiving "settle up" statements that reflected "Payroll Protection" funds being deducted from their commissions as part of the compensation calculation.

14. Shortly after receiving changes to his compensation, Mattox learned that other employees had approached one or more managers at Cincy JLR: Ginny McAfee, Andy Wise, and/or Matt Fairbanks expressing concerns and requesting an explanation as to how their compensation was being handled. Management told them, and they told Mattox, that that was "just the way it is" without any further explanation.

15. In speaking with others who raised the same questions and concerns, Mattox learned that no one was being offered any explanation as to the compensation change and the accounting for the "Payroll Protection" entries.

16. Without any explanation, it appears that, while payroll protection funds were paid out in certain months, they were essentially recouped from employees in subsequent months through unauthorized withdrawals from their compensation.

17. Mattox consulted with legal counsel regarding his compensation concerns.

18. Mattox, through legal counsel, sent a letter to the attention of Ginny McAfee at Cincy JLR on August 18, 2020, without naming Mattox by name, identifying issues relating to compensation and requesting an explanation (the "Letter"). A copy of the Letter is attached as Exhibit A.

19. Prior to authorizing his counsel to send the Letter, Mattox showed the Letter to other coworkers. All coworkers to whom he showed the Letter were in agreement with it.

20. Cincy JLR received the Letter on August 19, 2020. On that same day, and independent of the Letter, Mattox asked Ginny McAfee other questions regarding his compensation, including but not limited to his monthly stipend and paid vacation time.

21. Instead of responding to the Letter by providing any explanation for its changed compensation practices, Cincy JLR summarily terminated Mattox's employment on August 20, 2020. Mattox was the only employee terminated. To date, Cincy JLR has not offered any explanation of the compensation anomalies to Mattox or his legal counsel in response to the Letter.

22. Based on Mattox's customer relationship with legal counsel who authored the Letter, as reflected in Mattox's April 2020 commission report (copy attached hereto as Exhibit B), Cincy JLR discerned that Mattox was the unidentified employee referenced in the Letter.

23. In the termination meeting, Ed Neyra, who is an owner and/or member of Neyra Motor Cars, LLC, offered several pretextual reasons for Mattox's termination, including but not limited to a disciplinary write-up issued to Mattox on June 24, 2020. Except for the write-up on June 24, 2020, to which Mr. Mattox prepared a written rebuttal and requested that it be placed in his file, Mattox had not been disciplined, or even counseled, previously for any of the cited reasons. In the termination meeting, Mr. Neyra also berated Mattox for requesting two months earlier that his written rebuttal be placed in his employee file.

24. In the wake of Mattox's termination, Cincy JLR, through its general manager, conducted a sales meeting on August 22, 2020. The following topics were discussed:

- Cincy JLR received a letter questioning its use of PPP funds;
- The Letter referenced other employees who had sought counsel;
- Cincy JLR demanded to know who was involved in sending the Letter;
- The money paid out to employees that had been identified as PPP funds was not actually federal funds, but rather a personal loan from Mr. Neyra that was always meant to be paid back.

25. Mr. Wise's statement on August 22nd regarding PPP funds directly contradicts his email dated April 22nd.

26. At various times, Cincy JLR has threatened to terminate any employee who was involved in asking questions about PPP funds and their compensation, and/or the Letter.

27. Management required certain employees, including sales representatives, business managers, accountants, and used and new car managers, as well as Andy Wise, to attend a meeting in person at Cincy JLR on August 29, 2020. At the outset of the meeting, all cell phones were collected meeting in order to prevent anyone from recording it. During the meeting, Mr. Neyra informed the attendees that he could no longer trust them, apparently in reference to the compensation questions that had been previously raised. as a result of their questioning their compensation. He did not address any of the issues raised in the Letter, including but not limited to offering any explanation of Cincy JLR's practice of deducting funds marked as "Payroll Protection" from employees' pay.

28. Since the time of his termination, Mattox has received no further commission reports from Cincy JLR, and his access to Cincy JLR's electronic payroll portal has been removed.

29. At all times relevant to this Complaint, Defendant was aware that the client referenced in the Letter was Mattox, and that legal counsel was seeking to get an explanation on behalf of Mattox while attempting to avoid retaliation.

30. At all times relevant to this Complaint, Defendant knew from the Letter that Mattox had consulted with counsel regarding the terms and conditions of his employment.

## COUNT I – False Claims Act

31. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

32. The CARES Act aims to, among other things, grant relief to small businesses during the Covid-19 crisis by offering PPP loans to employers to keep employees on their payrolls.

33. Cincy JLR applied for and received a PPP loan.

34. The False Claims Act prohibits employers from presenting false or fraudulent claims for payment or approval of federal funds, including funds provided by the government to employers through PPP loans under the CARES Act.

35. Mattox observed potentially fraudulent activity by Cincy JLR as demonstrated by Cincy JLR's use of PPP funds, including but not limited to its apparent deductions marked as "Payroll Protection" from Mattox's and other employees' compensation.

36. Mattox's confrontation of Cincy JLR about its potentially fraudulent activity by questioning, through the Letter and otherwise, Cincy JLR's use of PPP funds, constitutes protected activity pursuant to 37 U.S.C. 3730(h)(1).

37. Cincy JLR was aware of Mattox's protected activity.

38. Cincy JLR terminated Mattox because of his protected activity.

7

39. 31 U.S.C. 3730(h)(1) prohibits employers from terminating employees who engage in activity protected under the False Claims Act.

40. Cincy JLR terminated Mattox's employment in retaliation for his engaging in protected activity.

41. Cincy JLR's termination of Mattox violates the False Claims Act.

42. At all times relevant to this action, Cincy JLR's termination of Mattox was characterized by hatred, ill will, or a spirit of revenge, and/or undertaken with a conscious disregard for Mattox's rights.

43. As a consequence of Cincy JLR's actions, Mattox has been damaged and continues to be damaged, including through the loss of his employment, compensation, and accompanying benefits, in an amount greater than $75,000 to be determined at trial, plus two times the amount of backpay, interest, and special damages, plus litigation costs and reasonable attorneys' fees.

## COUNT II – Retaliatory Termination in Violation of Public Policy

44. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

45. Cincy JLR's termination of Mattox constitutes adverse employment action.

46. Cincy JLR terminated Mattox in retaliation for Mattox's hiring of a lawyer, authorizing the Letter, and/or engaging in legally protected activity.

47. Clear public policies exist and are manifested in the Ohio constitution, federal and Ohio statutes, and Ohio common law that employees are protected from

retaliation by employers and their agents in consulting attorneys and engaging in protected activity.

48. Terminating employees in retaliation for consulting with attorneys and pursuing their employment rights violates those public policies.

49. Cincy JLR's termination of Mattox was motivated by hiring legal counsel and pursuing his employment rights.

50. Cincy JLR lacks an overriding legitimate business justification for terminating Mattox.

51. Cincy JLR's stated reasons for terminating Mattox are pretextual.

52. Cincy JLR's termination of Mattox violates Ohio public policy.

53. At all times relevant to this action, Cincy JLR's termination of Mattox was intentional, willful, wanton, characterized by hatred, ill will, or a spirit of revenge, and/or undertaken with a conscious disregard for Mattox's rights.

As a consequence of Cincy JLR's actions, Mattox has been damaged and continues to be damaged, including through the loss of his employment and accompanying benefits, in an amount greater than $75,000 to be determined at trial.

## COUNT III – Violation of Ohio Revised Code 4113.15

54. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully restated herein.

55. Ohio Revised Code 4113.15 limits the deductions that an employer may make from an employee's compensation.

56. Cincy JLR's unauthorized deductions from Mattox's, and other employees', paychecks constitute violations of R.C. 4113.16 et seq.

57. At all times relevant to this action, Cincy JLR's termination of Mattox was characterized by hatred, ill will, or a spirit of revenge, and/or undertaken with a conscious disregard for Mattox's rights.

58. As a consequence of Cincy JLR's actions, Mattox has been damaged and continues to be damaged, including through the loss of his employment and accompanying benefits, in an amount greater than $75,000 to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that this Court issue the following relief:

a. Judgment against Cincy JLR;

b. An award of compensatory damages against Cincy JLR, including but not limited to all lost pay and benefits and compensatory damages in an amount greater than $75,000 to be proven at trial;

c. An award of unpaid wages and/or commissions in amounts to be proven at trial and applicable liquidated damages;

d. An award of litigation costs, expenses, and reasonable attorneys' fees in amounts to be proven at trial;

e. An award of prejudgment interest and post-judgment interest;

f. An award of punitive or exemplary damages as may be permitted;

g. All other relief, both legal and equitable, to which Plaintiff is entitled at law or in equity.

Respectfully Submitted,

**FLAGEL & PAPAKIRK, LLC**
*Counsel for Plaintiff Jeffrey Mattox*

*/s/ James Papakirk*
James Papakirk (0063862)
Hallie S. Borellis (0076510)
FLAGEL & PAPAKIRK, LLC
50 E Business Way, Suite 410
Cincinnati, Ohio 45241
(513) 984-8111
FAX: (513) 984-8118
Email: jpapakirk@fp-legal.com
Email: hborellis@fp-legal.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ James Papakirk*
James Papakirk (0063862)
Hallie S. Borellis (0076510)